**Monica MORENO, Appellant,**

v.

**Ernesto and Pilar PEREZ, Appellees.**

**No. 01–09–00921–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 31, 2011.

Allecia Lindsey Pottinger, Law Office of Allecia L. Pottinger, Houston, TX, for Appellant.

Richard Garza, Pasadena, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices BLAND and HUDDLE.

## OPINION

SHERRY RADACK, Chief Justice.

This is an appeal from an order modifying the parent-child relationship. We affirm in part and reverse in part.

## BACKGROUND

In 2002, appellant Monica Moreno and Ernesto Perez, Jr. were divorced. Moreno and Perez, Jr. were appointed joint managing conservators of their four children, with Moreno given the right to establish the children's residence. Perez, Jr. was ordered to pay child support and awarded visitation under a standard possession order. Perez, Jr.'s parents, Pilar Perez (Pilar) and Ernesto Perez, Sr. (Perez, Sr.) (collectively, "petitioners"), intervened in

the divorce proceeding. The final decree, agreed to by the parties, provided that "all references to ERNESTO PEREZ, JR's periods of visitation mean visitation periods awarded to Intervenors, PILAR PEREZ and ERNESTO PEREZ, SR., as well."

## A. Temporary Orders on Perez, Jr.'s Petition to Modify Parent–Child Relationship

In November 2006, Moreno contacted Perez, Jr. and conveyed that she could not take care of the children. On November 15, 2006, the children moved in with Perez, Jr. and his parents Pilar and Perez, Sr., at their house. In light of the changed circumstances, in August 2007, Perez, Jr. petitioned the court to modify custody and support of the children. In an affidavit attached to his petition, he alleged that Moreno had recently "been [in] and out of the hospital and spent some time in a rehabilitation center." He further alleged that Moreno had "moved many times since [the] divorce and has lived with different male companions," and that Moreno and her "male companions would fight a lot and use drugs such as marijuana." He also complained that the children's clothes were not washed, and that they missed a lot of school. His affidavit also stated that Moreno had moved the children in with Moreno's brother, who he "believe[s] is required to register as a child sex offender." Finally, Perez, Jr. noted that Moreno had only visited the children five times from January to August of 2007, and stated that Moreno (1) cut those visits short, (2) failed to adequately supervise the children during at least one visit, and (3) during one visit, called Pilar crying hysterically because Moreno thought she had killed her current husband by running over him; Moreno had also assaulted her husband with a metal pole.

The court entered agreed temporary orders in October 2007 giving Perez, Jr. the exclusive right to establish the children's residence, awarded to Moreno visitation under a standard possession order, discontinued Perez, Jr.'s child support obligations, and ordered Moreno to pay the children's health insurance premiums as child support.

The children lived at Pilar's and Perez, Sr.'s house for about nine months. At some point during that nine months, Perez, Jr. remarried and moved to Pearland. In the summer of 2007, the children moved from their grandparents' house to Perez, Jr.'s house in Pearland, where they lived for about a year until Perez, Jr. died on June 19, 2008.

## B. Temporary Orders on Pilar's and Perez, Sr.'s Petition to Modify Parent–Child Relationship

A few weeks after their son died, on July 3, 2008, Pilar and Perez, Sr. petitioned the court to modify the 2002 divorce decree by granting them custody, support, and restricting Moreno's access to the children. The supporting affidavit executed by Pilar was substantially the same as the one Perez, Jr. had filed in support of his petition, but added the allegations that Moreno had once driven the children while her driver's license was suspended, and that Moreno had not allowed the children to participate in their father's funeral.

Following an August 26, 2008 hearing, the court entered temporary orders on September 5, 2008. These temporary orders appointed Pilar and Perez, Sr. as temporary sole managing conservators with the right to establish the residence of the children, and Moreno as temporary possessory conservator with the right to visit the children through the Victim's Assistance Center, Inc.'s SAFE Supervised Visitation Program.

The temporary orders also obligated Moreno to pay $605.00 per month in child support and $93.00 per month to cover

health insurance. The court made "findings and conclusions" in the order that "the amount of child support rendered by the Court is in accordance with the percentage guidelines" and that the percentage applied to Moreno's net resources is 35%.

### C. Trial on the Merits on Pilar's and Perez, Sr.'s Petition to Modify Parent–Child Relationship

On July 13, 2009, a trial was held on Pilar's and Perez's petition to modify the 2002 divorce decree. Moreno's attorney argued for a continuance because Moreno had a pending criminal charge for injury to a child (involving an unrelated child).[1] Moreno's criminal defense attorney advised her against testifying in the underlying proceeding until the criminal case was resolved. The court denied the request for a continuance after petitioners' lawyer represented that he did not intend to introduce any evidence related to the allegations from the criminal proceeding except the actual indictment to demonstrate that the charge was pending.

Early in the trial, the petitioners' lawyer noted that some of their evidence related to events that occurred prior to the 2008 temporary orders hearing, and that it was already heard at the earlier hearing. In response, the court noted that this was the actual trial on the merits of the modification of the 2002 decree, and that petitioners needed to present all their evidence in support of their modification.

PETITIONER'S COUNSEL: And Your Honor, might I have some guidance from the Court? We were here in late August of 2008. A lot of the information—we were here for three hours, a lot of information that occurred prior to that time. We've had a temporary order in August of 2008. Very little has happened from August to now.

COURT: This is the final trial. It's only things prior to the divorce decree that you're modifying, not the temporary orders.

PETITIONER'S COUNSEL: That's what I wanted to make clear, if you want to go from the time—

COURT: It's not temporary orders. Whatever you need—whatever your evidence is, whatever you want to counter, it's from the time the motion that you're modifying is dated.

Later in the trial, at the petitioners' counsel's request, the court took judicial notice of its earlier temporary orders. No one requested that the trial court admit or incorporate any of the evidence from the temporary orders hearing.

#### 1. The Trial Testimony

Pilar and Perez, Sr. were the only witnesses at trial. Pilar testified that she had been at her United States Postal Service job for 24 years, that she works predicable, stable hours, and that she provides health insurance for the children through her employment. She believes circumstances have changed since the 2002 divorce decree, and that it is in the children's best interest for the decree to be modified appointing her the sole managing conservator of the children. She testified about Moreno's turning over the children in November 2006, and the children's time living with either the petitioners or Perez, Jr. since then. Pilar testified that since entry of the temporary orders, Moreno has not inquired about the health of the chil-

---

1. The record does not contain a transcript of the August 2008 temporary orders hearing, and the temporary orders do not reference this pending criminal charge. It appears from the discussion among the court and attorneys at the trial, however, that the pending charge was a consideration in the court's appointing Pilar and Perez, Sr. as sole managing conservators in the temporary orders.

dren, and that petitioners had paid for the children's medical needs. When Pilar applied for social security survivor benefits for the children, her payments were delayed for four months because Moreno had previously applied for the benefits to go to her, even though Moreno only had the children for three weeks out of those four months.

Pilar testified that to her knowledge Moreno was not currently employed, and that Moreno's last employment (that she was aware of) was with an attorney and had ended September 12, 2008. Moreno had not paid any of the child support required by the temporary orders. Pilar opined that the children were performing better in school living with petitioners than they did when they lived with Moreno when they changed schools often and were often absent. She also testified that, when the children were living with Moreno between 2002 and 2006, Moreno did not regularly bathe them, they wore dirty clothes, and changed residences at least five times. Moreno also lived with at least four different men during that same timeframe, and currently lives with a boyfriend. Pilar testified that Moreno has driven with the children in the past while her driver's license was suspended. Moreno has visited the children three times through the SAFE visitation program since the temporary orders were entered.

On cross-examination, Pilar conceded that when Moreno received the children's social security death benefits, Moreno was owed child support arrearages from Perez, Jr. She also agreed that Moreno has called to speak to the children since temporary orders were entered. She testified that the children have asked to see Moreno, but not to live with her. Pilar believes that Moreno has driven recklessly with the children because her license was expired and the children were not required to wear seat belts.

Pilar identified the following reasons that "the children would have a significant impairment of their physical and emotional health" living with Moreno: (1) "She doesn't tell them the truth about a lot of things"; (2) "She had multiple partners"; (3) "She doesn't take good care of them"; and (4) "They missed a lot of school when they were with her."

Perez, Sr. testified about their house, the children's sleeping arrangements, and his job and stable work schedule. He believes "there's been a substantial change to the children's circumstances since the divorce decree." He opined that the children are usually quiet after their supervised visits with their mother. He confirmed that Moreno had not paid child support under the temporary orders, is about $6,000 in arrears in support payments and owes an additional $950.00 for unpaid health insurance premiums. He also confirmed that Moreno calls to talk to the children, and that it is in the children's best interest to talk to her and to continue supervised visits. Perez, Sr. testified about the extracurricular activities the children are involved in and expressed his desire for them to continue these activities. When asked whether Moreno has a job, he said he did not know if "she has returned to work" and identified her last employment as "working for some lawyers or something."

When asked why he believed Moreno should be restricted to supervised visitation, Perez, Sr. gave as reasons: (1) her pending injury-to-a-child charge, and (2) that Moreno cannot talk as freely to the children in the supervised environment as she could in unsupervised visits. When asked to identify why, other than the pending criminal charge, he and his wife should have custody, he stated that he was concerned that if Moreno had custody, she would restrict his and his wife's access to

the children. He also stated that he and his wife have a different parenting style than Moreno, and that he feels that he and his wife keep better tabs on the kids.

### 2. Other Evidence

The following exhibits were admitted at trial: (1) Pilar's 2008 W–2, (2) proof of children's health insurance through Pilar's employment, (3) court records indicating that Moreno received a deferred adjudication of guilt for shoplifting in 2000, (3) court records dated July 25, 2008 reflecting that Moreno has a pending charge for injury to a child, (4) Texas Department of Public Safety records dated August 26, 2008 indicating that Moreno's driver's license is revoked, and (5) a letter from the Law Office of Richard Garza stating that Moreno's employment with his office as an independent contractor ended on Friday, September 12, 2008.

### 3. The Trial Court's Rulings and Judgment

At the close of the evidence, Moreno moved for directed verdict, arguing that the petitioners did not have standing to seek modification, and that there is no evidence—other than the pending criminal charge—that Moreno poses any harm to the children such that modification is warranted. The court denied the motion.

The court then orally rendered judgment that (1) there has been a material and substantial change since the court's last order, (2) it is in the children's best interest to appoint Pilar and Perez, Sr. sole managing conservators and Moreno possessory conservator, and (3) out of an abundance of caution, visitation should continue supervised through the SAFE program during the pendency of Moreno's criminal proceedings, with a standard possession order substituting if she is not convicted. The court also ordered that all visitation must take place in Harris County, specified that no unrelated adults can be present for visitation, and enjoined Moreno from using any corporal punishment on the children. The court made the temporary support amounts final, and rendered judgment to petitioners for $7,678.00 for unpaid child support and health care. On July 22, 2009, the trial court memorialized these terms into a final written Order in Suit to Modify Parent–Child Relationship.

### D. Post–Judgment Proceedings and Appeal

Moreno filed a motion for new trial, arguing that the court abused its discretion by (1) concluding that the petitioners have standing to seek modification of the trial court's divorce decree, (2) denying Moreno's motion for continuance until her criminal charge had been resolved, (3) denying Moreno's pretrial motion to modify temporary orders to remove the child and medical support obligations, (4) granting Pilar and Perez, Sr. custody on insufficient evidence, (5) requiring supervised visitation with no evidence that Moreno was physically abusive or neglectful, (6) enjoining Moreno from administering corporal punishment without evidence that Moreno had ever inappropriately spanked her children, (7) awarding to petitioners unpleaded medical and child support arrearages without taking into account support Perez, Jr. owed Moreno, the social security payments that petitioners receive on behalf of the children, and the testimony and evidence that Moreno has not worked for her prior employer since Hurricane Ike.

Moreno also filed a request for an emergency hearing to address the petitioners' alleged unwillingness to surrender the children for their visitation in accordance with the court's order, despite proof that Moreno's criminal charge was dismissed and that her driver's license was reinstated. In that motion, Moreno alleged that the petitioners had been abusive to the chil-

dren, and requested she be given immediate possession. No separate hearing was held on the emergency motion. On October 7, 2009, the court heard and denied Moreno's motion for new trial.

With her notice of appeal, Moreno filed an Affidavit of Indigence declaring:

1. I have filed an appeal in the case described above.

2. I can't pay the following amount of court costs in this appeal, which includes the $175 filing fee, the $10 or $15 filing fee for each motion may file, the trial-clerk fee for the clerks record, and the court reporters fee for the reporter's record.

3. The nature and amount of my current employment income is approximately $200 a month because I have only been able to work temporary jobs which are only a few days in a month.

4. The nature and amount of my current government-entitlement income is $35.00 for my light bill and $710.00 for my housing.

5. The nature and amount of my current income, other than that described in my answers to 3 and 4 above, is $–0–.

6. I am married however my husband and I have ceased living together for 3 years and his income is not available to me.

7. I own no real property.

8. I own the following personal property: a 2003 Kia, Spectrum automobile.

9. I have the following amount of cash: $80.

10. I have the following amount of funds on deposit that I may withdraw: $16.00.

11. I have no other asserts.

12. I have four children whose father is deceased.

13. The nature and amount of my debts are hospital bills of $26,000.00.

14. The nature and amount of my monthly expenses are phone at $55.00 a month, gasoline $100.00 a month, and auto insurance of $50.00 a month. I received food from different churches.

15. My ability to obtain a loan for court costs is not possible at this time because I do not have sufficient income to pay back the loan.

16. Allecia Lindsey–Pottinger, an attorney is providing free legal services to me without a contingent fee.

17. Allecia Lindsey–Pottinger has not agreed to pay or advance court costs. My attorney has the skills and access to equipment necessary to prepare the appendix required by Texas Rule of Appellate Procedure 38.5(d).

The clerk and petitioners filed a contest, alleging that Moreno "failed to comply with one of more of the statutory requirements" for a finding of indigence.

A hearing on the contest was held on October 29, 2009, at which Moreno testified. She said that she makes between minimum wage and $8.00 per hour for one or two days a week doing contract work if it is available. She is working on an internship to become a medical assistant, but has not yet graduated. She testified that she lost her home and her steady employment when Hurricane Ike hit in September 2008. She is on government housing assistance and had her gall bladder removed two or three months ago. She has $1.65 in the bank and has had trouble finding steady employment, in part because of the child-endangerment charges that have since been dismissed. Moreno testified to living in Lake Jackson, Texas, and having to drive 70 miles to pick up the children in LaPorte, Texas for visitation. On cross examination, she agreed that she had a television, a sofa, and a bed that she could sell. She also listed various jobs she had applied for since working full time for a lawyer the previous year.

Moreno's attorney testified that she is representing Moreno pro-bono, and that Moreno is currently IOLTA eligible. Her attorney also argued that Moreno was entitled to a finding of indigence based on her IOLTA status and on her receipt of federal housing assistance. The court noted on the record its belief that one of the places Moreno claimed to have applied for work does not exist, and it sustained the contest to Moreno's indigence affidavit. An IOLTA Certificate was later filed in this Court.

We extended the time for Moreno to pay required fees and costs, and we now have before us the clerk's record, a transcript of the final trial on the merits, and a transcript of the indigency proceedings.

### THIS APPEAL

Moreno brings six issues on appeal, arguing that (1) the trial court abused its discretion by ordering Moreno to pay child support above the presumptive guidelines, (2) the trial court's order restricting Moreno's possession of the children to Harris County violates Texas Family Code section 153.193's mandate that restrictions on a parent's access to children not exceed that required to protect the children's best interests, and its requiring visits be outside the presence of unrelated adults is ambiguous and overly restrictive, (3) Moreno's pending charge for injury to a child does not support the trial court's prohibition against using corporal punishment absent any evidence that Moreno has excessively or in a harmful manner used corporal punishment, (4) the trial court abused its discretion by denying Moreno's request for an emergency hearing because refusing to hold the hearing was contrary to the children's best interest, (5) the trial court abused its discretion by sustaining the contest to Moreno's indigence, and (6) the trial court abused its discretion because the totality of the circumstances reflect that it acted without any guiding principles in modifying the 2002 divorce decree.

### A. Child Support Award

In her first issue, Moreno contends that the trial court abused its discretion in ordering her to pay $605.00 per month in child support. The only testimony at trial, she notes, was that she was unemployed, and had been so since Hurricane Ike. Without any evidence of her wages at trial, she argues her "obligation should have been set based on the federal minimum wage for a 40 hour week." *See* TEX. FAM. CODE § 154.068. She further emphasizes that there was no testimony at trial about special needs that would justify child support above the guidelines, and that Pilar testified that she receives $1,232.00 in social security benefits for the children. Moreno concedes that a trial court can make findings of intentional underemployment to support deviating from the guidelines upon evidence that a parent reduced his or her income for the purpose of decreasing child support payment, but here the evidence shows Moreno's employment ended with Hurricane Ike and that she had a pending felony charge impeding her ability to find new employment.

In response, the petitioners claim that the trial court's support order is supported by testimony from the August 26, 2008 hearing on temporary orders, which resulted in the trial court finding at that time that Moreno's net resources were $1,730.00 per month, thus supporting an order of $605.00 per month under the guidelines. According to the petitioners, Moreno's refusal to testify at the trial was "a personal choice and legal strategy" that left the trial court with "no new information that her previous testimonial information was incorrect, outdated or invalid." Accordingly, the petitioners argue, the trial court's

order reflected a proper application of the guidelines.

## 1. Applicable Law

The Texas Family Code provides that the court "shall calculate net resources for the purpose of determining child support liability." TEX. FAM.CODE ANN. § 154.062(a) (Vernon Supp. 2010). "Net resources" include all wage and salary income, self-employment income, and all other income actually being received. *Id.* § 154.062(b). Section 154.063 also provides that "[t]he court shall require a party to ... furnish information sufficient to accurately identify that party's net resources and ability to pay child support." *Id.* § 154.063 (Vernon 2008). "In the absence of evidence of the wage and salary income of a party, the court shall presume that the party has wages or salary equal to the federal minimum wage for a 40–hour week." *Id.* § 154.068.

Generally, a complaining party must show that a trial court's support order constitutes a clear abuse of discretion in order for it to be disturbed on appeal. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *McGuire v. McGuire,* 4 S.W.3d 382, 384 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied). In the child-support context, sufficiency challenges are not independent points of error, but are "incorporated into an abuse of discretion determination." *McGuire,* 4 S.W.3d at 387 n. 2; *see Burney v. Burney,* 225 S.W.3d 208, 214 (Tex.App.-El Paso 2006, no pet.). Our analysis employs a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *McGuire,* 4 S.W.3d at 387 n. 2. A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its order. *Newberry v. Bohn-Newberry,* 146 S.W.3d 233, 235 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

## 2. Discussion

At the close of the trial, the court ordered that Moreno was to continue paying support "per the temporary orders per the schedule of the temporary orders." The court's written order obligates Moreno to pay $605 per month. The order also makes findings and conclusions that (1) the court's order is in accordance with the percentage guidelines, (2) Moreno's net monthly resources are $1,730.00, (3) applying the percentage guidelines to Moreno's net monthly resources results in an obligation of $605.00 per month, and (4) the percentage of Moreno's monthly resources awarded as child support is 35%.

In support of the court's award, the petitioners urge that (1) the award is supported by testimony from the temporary orders hearing, and (2) there was no evidence of Moreno's unemployment at trial. We disagree on both counts and hold that the trial court abused its discretion by basing a child support order on a net resources finding not supported by any evidence at trial.

Without citation to the record, the petitioners state that Moreno "testified at the temporary hearing on August 26, 2008 and testified as to her current employment, earnings and resources." This hearing testimony is not before us and, in any event, cannot support the trial court's final judgment. *See, e.g., May v. May,* 829 S.W.2d 373, 376 (Tex.App.-Corpus Christi 1992, writ denied) (refusing to consider evidence from temporary custody hearing "or the lack of a record of such evidence, in determining whether there was sufficient evidence to support the trial court's judgment"); *In re J.R.K.,* No. 06–10–

00121–CV, 2011 WL 3242264, at *2 (Tex. App.-Texarkana July 8, 2011, no pet.) (mem. op.) (noting that testimony was "not introduced or admitted as evidence at the final hearing" and accordingly concluding that "the evidence from the hearing on temporary orders could neither be considered by the trial court in reaching its final orders, nor by this Court on reviewing the final order"); *cf. Amco Mesh & Wire Co. v. Stewart*, 474 S.W.2d 740, 741–42 (Tex.Civ. App.-Houston [1st Dist.] 1971, no writ) ("The testimony taken at a previous trial cannot be considered by the trial judge in a subsequent trial unless it is admitted at that trial."). Here, it would be particularly inappropriate to rely upon evidence from the temporary orders hearing because, at the final trial on the merits, the trial court specifically disclaimed an intention to rely on earlier testimony and instructed the petitioners to put on any evidence needed to support their requested final judgment.

In addition, the petitioners' assertion that there was no new evidence about Moreno's employment, or lack thereof, at the final trial is incorrect. Pilar testified that to her knowledge Moreno was not currently employed, and that Moreno's last employment (that she was aware of) was with an attorney and had ended September 12, 2008—a date that was *after* the temporary orders hearing testimony the petitioners rely upon here. Although the petitioners are correct that Moreno, on advice of her criminal counsel, did not testify at the final trial, her attorney admitted into evidence a letter from Moreno's former attorney employer confirming that her position as an independent contractor in his office ended September 12, 2008.

Thus, in sum, the trial court disclaimed any reliance on evidence presented at the earlier temporary orders hearing, there was documentary and testimonial evidence at trial reflecting that the basis for the trial court's earlier net resources determination at the temporary orders stage was no longer valid, and there was trial testimony from one of the petitioners, Pilar, that—to her knowledge—Moreno was not employed at the time of trial.

■ "In the absence of evidence of the wage and salary income of a party," the Texas Family Code instructs the trial court to "presume that the party has wages or salary equal to the federal minimum wage for a 40–hour week." Tex. Fam.Code Ann. § 154.068 (Vernon 2008). We agree with Moreno that section 154.068 minimum wage presumption should have been applied by the trial court. With no evidence about Moreno's income, assets, or employment at the time of trial, the trial court's determination that she had monthly net resources of $1,710.00 is not supported by any evidence and must be reversed. *Miles v. Peacock*, 229 S.W.3d 384, 390–91 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (reversing trial court's calculation of appellant's net resources as $6,000.00 because "the record is void of evidence concerning [appellant]'s employment, wages, salary, or income"). We thus sustain Moreno's first issue and reverse and remand for further proceedings the portion of the trial court's order setting forth the trial court's net resources findings and imposing Moreno's child support obligation.

## B. Visitation Restrictions

The trial court's order provides that, in the event that Moreno is acquitted of her pending felony charge, or if that charge is dismissed, her possession and access rights are no longer restricted to the SAFE Supervised Visitation Program and are instead governed by standard possession provisions set out in the order. The standard possession order contains several restrictions, including: (1) "Moreno's possession and access with the children shall

be restricted to Harris County"; and (2) "Moreno shall exercise her entire period of possession and access without the presence of any unrelated adult companions." Moreno complains that restricting her access to Harris County when the parties do not live in Harris County "has nothing to do with the best interest of the children and is an unreasonable and excessive restriction on Moreno's access."

Moreno also complains that the restriction that access and visitation take place "without the presence of any unrelated adult companions" is unclear and ambiguous, and lacks the specificity required for a judgment enforceable by contempt. Additionally, Moreno argues that if the order is read literally to "restrict Moreno's access to the children to absolute solitude," that amounts to an unreasonable restriction because there is no evidence supporting such a far-reaching restriction.

In response, the petitioners emphasize that the best interest of the children is the primary consideration in matters related to access and possession, and that the trial court is given wide latitude in determining the best interests. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). As support for these restrictions, the petitioners point to the following evidence: (1) Pilar's testimony as to her "stable marriage, stable home, and stable employment," (2) Moreno's "voluntary relinquishment of the primary care of the children since 2006," (3) Moreno's "lack of possession of the children in the previous years, ... lack of concern for the children's education needs, medical needs, or emotional needs," (4) Moreno's "inability to provide proper hygiene for the children during her possession," (5) Moreno's "criminal history

and pending charges," (6) Moreno's "previous Child Protective Services investigations,"[2] (7) "Moreno's failure to follow the children possession through the SAFE Supervised Visitation Program," and (8) that Moreno "would move around a lot and lived with multiple male companions."

### 1. Applicable Law

We review the trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. *See Gillespie*, 644 S.W.2d at 451; *In re M.P.B.*, 257 S.W.3d 804, 811 (Tex.App.-Dallas 2008, no pet.). To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex.2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex.2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995).

The best interest of the child is always the primary consideration in resolving issues of conservatorship, possession, and access concerning a child. Tex. Fam. Code Ann. § 153.002 (Vernon 2008). Courts employ the non-exhaustive list of *Holley* factors to determine the best interests of the children. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *see also In re Doe 2*, 19 S.W.3d 278, 300 n. 20 (Tex. 2000). These factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the

---

**2.** Although the petitioners mention these alleged CPS investigations several places in their brief, we note that the only reference to a CPS history at trial was testimony from Pilar that the trial court struck as inadmissible hearsay and indicated that it would not consider. We likewise do not consider alleged CPS investigations referenced in the petitioners' brief but not in the record.

future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371–72.

■ Restrictions or limitations on a parent appointed as a possessory conservator's right to possession of or access to a child are permissible and within the trial court's discretion, but they may not "exceed those that are required to protect the best interest of the child." Tex. Fam.Code Ann. § 153.193 (Vernon 2008); *see George v. Jeppeson,* 238 S.W.3d 463, 471 (Tex. App.-Houston [1st Dist.] 2007, no pet.). When a court modifies terms and conditions of an access and possession order, the record must contain evidence in support of the terms of the modification—a bare recitation in the court's order that such modification is in the children's "best interest" is not enough. *Seidel v. Seidel,* 10 S.W.3d 365, 370 (Tex.App.-Dallas 1999, no pet.).

■ "To be enforceable by contempt, a judgment must set out the terms for compliance in clear and unambiguous terms." *Niskar v. Niskar,* 136 S.W.3d 749, 754 (Tex.App.-Dallas 2004, no pet.). A child visitation order must be specific as to the times and conditions of possession and access. *In re Walters,* 39 S.W.3d 280, 288 (Tex.App.-Texarkana 2001, no pet.).

**2. Discussion**

■ Moreno first complains that the trial court's restricting visitation and access to Harris County had nothing to do with the best interest of the children and amounts to an unreasonable and excessive restriction on Moreno's access given that neither the children nor she resided in Harris County at the time of trial. In response, the petitioners do not specifically identify any evidence supporting this geographical restriction on access, instead pointing generally to the court's discretion to impose such restrictions in the best interest of children.

It is not apparent from the record why the court restricted Moreno's access and possession to Harris County. We cannot conclude that doing so was an abuse of discretion, however, because we can find no reference at trial to Moreno's living in any particular county, and Moreno did not complain about this geographical limitation in her motion for new trial. Moreno lived in Harris County when the original divorce decree being modified was entered, and the first reference we find to her residence in another county, i.e., Brazoria, was her testimony at the indigency hearing that she lives in Lake Jackson. Without any indication that Moreno asked the trial court to permit visitation and access in a county other than Harris County, her post-judgment testimony about her residence would not fairly put the trial court on notice about Moreno's complaint here that restricting access to Harris County is not supported by the evidence. Tex.R.App. P. 33.1(a); *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g) (holding that it is error for court of appeals to reverse trial court's ruling that had not been objected to at the trial court level); *Inglish v. Prudential Ins. Co. of Am.,* 928 S.W.2d 702, 705 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (holding that issues not fairly presented to the trial court are waived).

While the trial court is free to revisit this restriction on remand, we will not

reverse geographical limitations in the order based on evidence that the trial court did not have. We thus overrule the portion of Moreno's issue two complaining about the trial court's order restricting her possession and access to Harris County.

■ Moreno also complains about the restriction that she "shall exercise her entire period of possession and access without the presence of any unrelated adult companions." She argues that use of the phrase "unrelated adult companions" is vague or, alternatively, that it is unduly restrictive if applied literally. In response, the petitioners point generally to all of the trial testimony and argue that it supports what they characterize as an order restricting Moreno's "possession and access without the presence of *adult male companions*," rather than the actual restriction in the order: "*unrelated adult companions*." (emphasis added).

■ The trial court has broad discretion in fashioning restrictions on a parent's possession and access that are in the best interest of the children, including forbidding unrelated people from living or staying overnight at the parent's home during visitation. *See, e.g., Peck v. Peck,* 172 S.W.3d 26, 32–33 (Tex.App.-Dallas 2005, pet. denied) (affirming order enjoining "both parties, while in possession of the child, from permitting persons of the opposite sex with whom they have or might have an intimate or dating relationship from remaining overnight in the same residence or lodging"); *Denson v. Denson,* No. 11–02–00083–CV, 2003 WL 1748351, at *2–3 (Tex.App.-Eastland, April 3, 2003, no pet.) (affirming order requiring that father's male roommate "be absent during the time of the father's possession of the children") Indeed, although rarely warranted, the court can deny a parent access all together. *Walters,* 39 S.W.3d at 287 ("[A] severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child.").

■ Here, Pilar testified that—at the time of trial—Moreno was living with a boyfriend and that, between the date of Moreno's divorce from Perez, Jr. and the time the children left Moreno's possession, Moreno had moved her children in with at least four different men. A parent's living with a boyfriend or girlfriend, after having exposed a child to "several different people in dating relationships," can support a finding that it is in a child's best interest not to visit with a parent while a non-relative boyfriend or girlfriend is present. *Peck,* 172 S.W.3d at 33–35. During the trial court's oral rendition of the judgment, this type of exposure to unrelated males appeared the focus of the court's concern:

> And, if she's not convicted, once all appeals, if any, are finalized, she will then go to a standard possession order provided that when she has these children in her possession, there will be no unrelated adult to whom she's not married living with her in her presence while is in possession of these children. So if she is living with a man or she has men in her life, they cannot be anywhere near her or these children during such times. They can't be in the home in the evening. No access of the children if they're in the possession of these unrelated males.

We conclude, on this trial record, that it was within the trial court's discretion to enter an order that visitation take place outside the presence of any unrelated adult *male* companion. However, given that restrictions on possession cannot "exceed those that are required to protect the best interest of the child," Tex. Fam.Code Ann. § 153.193, and given that there must be record evidence to support a finding that a restriction is in the child's best interest, *Seidel,* 10 S.W.3d at 370, we sus-

tain Moreno's second issue to the extent she argues that a restriction on any *unrelated adult* is not supported by any evidence that such restriction is in the best interest of the children. We reform the trial court's judgment to change "unrelated adult" to "unrelated adult male" to bring this restriction into conformity with the trial evidence.

## C. Restriction on Corporal Punishment

The trial court's order provides that "Moreno is permanently enjoined from ... "[e]xercising, using or causing the use of corporal punishment on any of the children." Moreno argues that the only evidence that could purportedly support this injunction was her pending injury to a child felony charge. She contends that there "was no evidence whatsoever that Moreno had physically harmed her children and a pending criminal charge is speculative at best." Moreover, "assuming, *arguendo*, that the court made the order in the abundance of caution, the order could have been conditional on the charges being dismissed as the court did with visitation."

In response, the petitioners concede that during a parent's period of possession, he or she has the right to reasonably discipline a child, TEX. FAM.CODE § 153.074, but they also note the public policy of the state to provide a safe, stable, and nonviolent environment for the child. *Id.* at § 153.001. The petitioners explain that, at the time of trial, Moreno was under indictment for allegedly using excessive force in administering corporal punishment with a belt to a child under the age of fifteen that resulted in massive deep bruising. They then state that the court properly determined that Moreno was "innocent until proven guilty so the court made its ruling including the restriction of no corporal punishment based on other evidence."

## 1. Applicable Law

■ As with the other restrictions in the trial court's order, we review this prohibition on the use of corporal punishment under an abuse of discretion standard. *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex. App.-Houston [1st Dist.] 2001, no pet.) ("We give wide latitude to a trial court's decision on custody, control, possession, and visitation matters, ... revers[ing] the trial court's order only if it appears from the record as a whole that the trial court abused its discretion."). The court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* As with evidentiary challenges to support orders, an allegation of legal or factual insufficiency to support custody and visitation order is not treated as an independent ground of error, but instead incorporated into the abuse of discretion determination. *Patterson v. Brist*, 236 S.W.3d 238, 240 (Tex. App.-Houston [1st Dist.] 2006, pet. dism'd).

Unless limited by court order, a parent has the right, during periods of possession of their child, to exercise "reasonable discipline," TEX. FAM.CODE ANN. § 153.074 (Vernon 2008), including the use of corporal punishment. *Id.* § 151.001(e).

■ An indictment reflecting a charged offense against a parent for which there is no conviction is admissible as evidence of changed circumstances in assessing the best interest of a child, but not simply to show character conformity. *In re K.L.R.*, 162 S.W.3d 291, 305 (Tex.App.-Tyler 2005, no pet.).

## 2. Discussion

The trial court found in its order that Moreno is "presumed innocent until found guilty in her current pending criminal charge," but that the requested modification should be granted "for other reasons." The court made the requirement that Mor-

eno's visitation with her children be supervised through the SAFE program contingent upon the existence of a pending charge or conviction against Moreno. The permanent prohibition on corporal punishment, however, survives Moreno's acquittal or dismissal of the charge against her.

Essentially, Moreno complains that even if her pending injury-to-a-child charge provided grounds for prohibiting her use of corporal punishment, the trial court's order should have provided that the corporal punishment restriction expired automatically if she were later acquitted on her pending charge or if the charge were dismissed. Moreno concedes in her brief that "she could request a modification of the order to have this injunction removed" now that her felony charge has been dismissed, but contends that would be less efficient.

The trial court's prohibiting the use of corporal punishment was within its discretion. Whether the dismissal of Moreno's felony injury-to-a-child charge amounts to a changed circumstance warranting removal of that restriction is an issue for Moreno to present to the trial court in the first instance. We thus overrule Moreno's third issue.

## D. Hearing Request

After the trial, but before the hearing on Moreno's motion for new trial, she filed a "Request for Emergency Hearing," in which she requested certain relief, including, among other things, that she be given exclusive possession of the children. The court did not hold a separate hearing on this motion, but did move forth with the previously scheduled hearing on Moreno's motion for new trial (of which we do not have a record). Moreno argues that the trial court should have interpreted her motion for an emergency hearing as a request for modification of the exclusive right to determine primary residence of a child within one year of order under section 156.102 of the Texas Family Code. According to Moreno, because an affidavit she attached to the motion sufficiently alleged concern that the children's present environment may endanger the child's physical health or significantly impair the children's emotional development, *see* TEX FAM.CODE § 156.102(b), the court abused its discretion in refusing to hold the hearing. In response, the petitioners argue that Moreno's "Motion for Emergency Hearing" was not a proper post-judgment motion requiring any action by the trial court.

Section 156.102 sets forth requirements that must be followed by a party seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child within one year of such an order. TEX. FAM.CODE ANN. § 156.102 (Vernon Supp. 2010). The court is required to set a hearing on the motion if the movant files the required motion and affidavit, and the "court determines that the facts stated are adequate to support an allegation" that "the child's present environment may endanger the child's physical health or significantly impair the child's emotional development." *Id.* at § 156.102(b),(c). After review of Moreno's motion for emergency hearing and affidavit, we conclude that Moreno did not—with either the title or substance of her motion—adequately put the court on notice that her motion was brought under section 156.102. Thus, the court could not have abused its discretion in failing to set a section 156.102(c) hearing.

## E. Contest to Affidavit of Indigence

Moreno complains that the contest to her affidavit of indigence should have been overruled because there was sufficient evidence of Moreno's inability to pay the required fees and for preparation of the record. Specifically she argues that

the undisputed record evidence that Moreno is receiving public housing assistance is sufficient to demonstrate her indigence. *Cf. Goffney v. Lowry,* 554 S.W.2d 157, 159–60 (Tex.1977) ("The fact that any individual is dependent upon the charity of the public afforded through the various welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs or give security therefor."). She further contends that, even though the IOLTA Certificate reflecting Moreno's qualification for IOLTA was not filed at the hearing, we should consider it here in holding that the trial court abused its discretion.

The petitioners respond by pointing to Moreno's alleged testimony at the temporary orders hearing (of which we have no record) that she was gainfully employed in 2008 with net resources of $1,730.00 per month. Without addressing Moreno's arguments, they ask us to affirm the trial court's order sustaining the contest to Moreno's affidavit.

### 1. Applicable Law

When, as here, a contest to a party's affidavit of indigence is contested, the burden is on the applicant to prove indigence by a preponderance of the evidence. TEX.R.APP. P. 20.1(g). As the Texas Supreme Court recently explained, the ultimate test for determining indigence has long been straightforward: "Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?" *Higgins v. Randall County Sheriff's Office,* 257 S.W.3d 684, 686–87 (Tex.2008) (quoting *Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942)); *see also* TEX.R.APP. P. 20.1(h)-(i). "Depending upon the circumstances, certain types of financial information may be relevant and helpful to a court when evaluating a contested claim of indigence, including the ... items described in Rule 20.1(b)." *Id.* These include

(1) the nature and amount of the party's current employment income, government-entitlement income, and other income;

(2) the income of the party's spouse and whether that income is available to the party;

(3) real and personal property the party owns;

(4) cash the party holds and amounts on deposit that the party may withdraw;

(5) the party's other assets;

(6) the number and relationship of any dependents;

(7) the nature and amount of the party's debts;

(8) the nature and amount of the party's monthly expenses;

(9) the party's ability to obtain a loan for court costs;

(10) whether an attorney is providing free legal services to the party without a contingent fee; and

(11) whether an attorney has agreed to pay or advance court costs.

TEX.R.APP. P. 20.1(b). An affidavit need not specifically address all the items enumerated in Rule 20.1(b) if it adequately conveys the applicant's inability to pay. *Higgins,* 257 S.W.3d at 688.

In 2008, Rule 20 was amended to provide that affidavits accompanied by certain complying IOLTA certificates cannot be contested:

(1) By Certificate. If the appellant proceeded in the trial court without advance payment of costs pursuant to a certificate under Texas Rule of Civil Procedure 145(c) confirming that the appellant was screened for eligibility to receive free legal services under income guidelines used by a program funded by

Interest on Lawyers Trust Accounts or the Texas Access to Justice Foundation, an additional certificate may be filed in the appellate court confirming that the appellant was rescreened after rendition of the trial court's judgment and again found eligible under program guidelines. A party's affidavit of inability accompanied by the certificate may not be contested.

TEX.R.APP. P. 20.1(a)(1). The purpose of this amendment prohibiting contests lodged against applicants that have "passed the rigorous screening process for beneficiaries of IOLTA-funded programs" was to "eliminate frivolous challenges to a party's indigence, thereby promoting two important principles of our judicial system—conservation of judicial resources and increased access to justice for the poor." *Higgins,* 257 S.W.3d at 687.

### 2. Discussion

Moreno argues that evidence of her receipt of public assistance establishes, as a matter of law, her indigence. While recognizing that such evidence is sufficient to demonstrate indigence in the trial court, *see* TEX.R. CIV. P. 145(a) (" 'party who is unable to afford costs' is . . . a person who is presently receiving a governmental entitlement based on indigency"), the Texas Supreme Court has expressly declined to decide whether such evidence is likewise sufficient under rule 20.1. *In re C.H.C.,* 331 S.W.3d 426, 430 n. 7 (Tex.2011) ("We need not determine whether the standard mentioned in *Griffin [Industries, Inc. v. Honorable Thirteenth Court of Appeals,* 934 S.W.2d 349 (Tex.1996) ] and present in Civil Rule 145 also applies to our new Appellate Rule 20.1, as the affidavits submitted by [appellant] clearly show that [appellant] has no money to pay the costs of an appeal, assets from which to procure the funds, or is being represented by counsel who will advance costs."). We likewise need not decide whether the evidence of

Moreno's qualification for public assistance alone establishes her indigence, because we hold that she established her indigence by a preponderance of the evidence through her affidavit and the evidence presented at the hearing.

■ Satisfaction of the indigence rules should be liberally construed "in favor of the right to appellate review." *In re Kubankin,* 257 S.W.3d 852, 857 (Tex.App.-Waco 2008, orig. proceeding). Moreno's affidavit addressed the information in Rule 20.1(b), asserting that she is unable to pay for the record and the costs and fees associated with this appeal. She sets forth her income and expenses, and her government housing assistance. Her affidavit outlines her lack of any additional income or assets, and her significant debt for medical services. She also averred that she is receiving free legal services without a contingent fee and that her pro-bono lawyer had not agreed to pay or advance court costs.

The contest to this affidavit did not challenge any particulars of the affidavit, stating instead that "Affiant failed to comply with one or more of the statutory requirements under Texas Rules of Appellate Procedure 20(b)." At the hearing, Moreno confirmed her limited income and inability to pay costs of her appeal. She is on government housing assistance and two or three months before the hearing had her gall bladder removed, which restricted her ability to work for 6–8 weeks and left her with significant medical bills. She has $1.65 in the bank, and has had trouble finding steady employment, in part because of the child-endangerment charges that have since been dismissed. Moreno testified to living in Lake Jackson, Texas, and having to drive 70 miles to pick up the children in LaPorte, Texas for visitation, which increases her monthly gas expenses. In response to questions from the court, Moreno listed specifically various jobs she

had applied for since working full time for a lawyer the previous year.

Moreno's attorney testified that she is representing Moreno pro-bono, and that Moreno is currently IOLTA eligible. At the conclusion of the hearing, her attorney argued that Moreno was entitled to a finding of indigence based on her IOLTA status and on her receipt of federal housing assistance. Moreno's attorney later filed an IOLTA Certificate in this Court.

Rule 20.1, and the supreme court cases interpreting it, reflect the court's view that, a person's passing "the rigorous screening process for beneficiaries of IOLTA-funded programs," is indicative of that person's indigence status for purposes of demonstrating an inability to pay the costs of an appeal. *Higgins,* 257 S.W.3d at 687 n. 2. Here, it is undisputed that there was no IOLTA Certificate filed with Moreno's affidavit; indeed, had there been, the petitioners' contest would have been expressly prohibited by the rules. TEX. R.APP. P. 20.1(a)(1). Ignoring the significance of the testimony regarding Moreno's IOLTA eligibility, however, would elevate form over substance—something the supreme court has admonished is particularly inappropriate when assessing indigence. *Higgins,* 257 S.W.3d at 688–89.

No evidence was adduced at the hearing calling into question the veracity of any of Moreno's assertions about her income, assets, or her inability to pay for the record and other appellate costs. No one called into question her receipt of government assistance or her IOLTA eligibility. And, while the trial court expressed its disbelief that Moreno could not more quickly secure fuller employment, that skepticism does not negate the fact that Moreno demonstrated, by a preponderance of the evidence, that she was entitled to be declared indigent for purposes of appeal under Rule 20.1. The trial court erred in sustaining the petitioners' contest to Moreno's indigence affidavit.

We thus sustain Moreno's fifth issue.

## F. Totality of the Circumstances

Moreno asserts that the record as a whole demonstrates that the trial court made "several errors that amounted to an improper judgment." In making this argument, she repeats several of her earlier arguments and contends generally that the petitioners did not meet their burden of proof in showing that modification was in the best interest of the children. The only two specific complaints in this totality-of-the-circumstances section that do not overlap with issues previously addressed here are her arguments that (1) the petitioners lacked standing to seek modification of the 2002 decree, and (2) the trial court erred by refusing to grant Moreno a continuance of the trial setting, and that error prevented her from providing a full defense because her criminal attorney advised her not to testify. The petitioners do not respond directly to these arguments, but instead generally contend that, because there is some substantive and probative evidence to support the trial court's order, there was no cumulative error.

Moreno's assertion that the petitioners lack standing is incorrect. Because they were granted visitation rights in the 2002 divorce decree as intervenors, the petitioners have standing as a party "affected by" the 2002 order that they sought to modify. TEX. FAM.CODE ANN. § 156.002(a) (Vernon Supp. 2010); *In re S.A.M.,* 321 S.W.3d 785, 789–90 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (recognizing that intervenor in original suit has standing to seek modification of order appointing managing conservator over children).

Further, we cannot conclude on this record that the trial court committed error by denying Moreno's motion for

continuance. The granting or denial of a motion for continuance "will not be disturbed unless the record discloses a clear abuse of discretion." *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 493 (Tex.App.-Fort Worth, 1999, pet. denied) (citing *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding)). While Moreno complains that she was unable to testify, the record reflects that the trial court was sensitive to Moreno's predicament regarding her criminal case and determined that the evidence in this proceeding and the criminal proceedings would likely not overlap. Petitioners' counsel represented that he would not delve into any matters related to the criminal case, other than introducing the indictment. The court noted that, if at any time Moreno was uncomfortable with the subject matter of a question, she could assert her Fifth Amendment right not to testify. And the court stated that if it decided during the trial that any evidentiary matters related to the pending criminal charge became relevant, the court would recess the modification proceedings until the criminal case concluded.

We have identified the portions of the order that are unsupported by the evidence and ordered the court to reform its order. Moreno has not demonstrated additional error in the "totality of the circumstances." We overrule Moreno's sixth issue.

## CONCLUSION

We reverse and remand the trial court's judgment for reformation in accordance with this opinion.