Shayna EPPS, Appellant

v.

Caston DEBOISE, Appellee

NO. 01-16-00285-CV

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued October 17, 2017

Rehearing Denied December 21, 2017

George W. Dana, Houston, TX, for appellant.

Grace M. Crump, Houston, TX, for appellee.

Panel consists of Justices Jennings, Higley, and Massengale.

## OPINION

Laura Carter Higley, Justice

Shayna Epps filed a petition to modify the parent-child relationship, requesting a

change in child support and visitation requirements. Caston Deboise filed a counter-petition, requesting a change in the rights of possession. After a trial, the jury modified the parent-child relationship by designating Deboise as the conservator who has the exclusive right to designate the primary residence of Epps and Deboise's child. In five issues on appeal, Epps argues (1) the evidence is legally and factually insufficient to support the jury's modification of the conservator who has the exclusive right to designate the primary residence of the child, (2) the trial court erred by denying her motions for mistrial and new trial, and (3) the trial court erred by including a certain jury instruction in the charge.

We affirm.

## Background

Shayna Epps gave birth to her and Caston Deboise's child in 2009. Before 2011, Epps and Deboise ended their relationship. On January 28, 2011, the two signed an "Agreed Order In Suit Affecting the Parent-Child Relationship & Declaratory Judgment." The agreed order designated Epps as the conservator who had the exclusive right to designate the primary residence of the child.

Conflict arose between Epps and Deboise concerning the child. In June 2013, Epps initiated the underlying suit, seeking to modify child support amounts and the terms of possession of and access to the child. Deboise filed a counter-petition, seeking to be designated as the conservator who has the exclusive right to designate the primary residence of the child.

Trial took place in October 2015. The only question submitted to the jury was which parent should designate the primary residence of the child. The jury determined that Deboise should be designated as the conservator who had the exclusive

right to designate the primary residence of the child.

## Legal & Factual Sufficiency of Custody Modification

In her first three issues, Epps challenges the legal and factual sufficiency of the evidence to support the jury's designation of Deboise as the conservator who has the exclusive right to designate the primary residence of the child.

### A. Standard of Review

 We review a trial court's decision to modify conservatorship under an abuse of discretion standard. *Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 64 (Tex. App.—Houston [1st Dist.] 2007, no pet.). However, a trial court is not permitted to contravene a jury verdict on the issue of determination of residence. TEX. FAM. CODE ANN. § 105.002(c)(1)(D) (West 2014). Instead, the jury's verdict is reviewed for legal and factual sufficiency. *See Lenz v. Lenz*, 79 S.W.3d 10, 17 (Tex. 2002) (applying legal sufficiency standard to review of jury verdict); *Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.) (holding legal- and factual-sufficiency review applies to jury verdict).

 We will sustain a legal sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, a court must consider evidence in the light most favorable to the verdict and indulge every reasonable infer-

ence that would support it. *Id.* at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.* However, if the evidence at trial would enable reasonable and fair minded people to differ in their conclusions, then the fact-finder must be allowed to do so. *Id.* A reviewing court cannot substitute its judgment for that of the fact-finder, so long as the evidence falls within this zone of reasonable disagreement. *Id.*

 In conducting a factual sufficiency review, we must consider all of the evidence that supports or contradicts the fact-finder's determination. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We may set aside a verdict only if the evidence supporting it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When conducting a factual sufficiency review, we must not merely substitute our judgment for that of the fact-finder. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id.*

## B. Applicable Law

 As it pertains to this case, a court can modify the terms of conservatorship, possession, or access if the movant shows that (1) there has been a material and substantial change warranting the modification since the date of the last order establishing conservatorship, possession, or access and (2) the modification would be in the best interest of the child. *See* TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West 2014); *Lenz*, 79 S.W.3d at 14.

 For the requirement of a material and substantial change, "[a] final judgment in a custody proceeding is res judicata of the best interest of a minor child as to conditions then existing." *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969). In addition, public policy "favors a high degree of stability in a young child's home and surroundings." *Mumma v. Aguirre*, 364 S.W.2d 220, 221 (Tex. 1963); *accord* TEX. FAM. CODE ANN. § 153.001(a)(2) (West 2014) (establishing public policy of Texas to provide stable environment for child). Accordingly, establishing a material and substantial change is required to foster that stability. *See Mumma*, 364 S.W.2d at 221. "The controlling considerations are those changes of conditions affecting the welfare of the child." *Bukovich v. Bukovich*, 399 S.W.2d 528, 529 (Tex. 1966). The desires and relationship between the parents are only relevant to the degree they impact the welfare of the child. *See id.*

 Determination of a substantial and material change is not controlled by a set of guidelines; instead, it is fact specific. *Arredondo v. Betancourt*, 383 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Even so, certain events can be indicative of a substantial and material change. *See id.* at 734–35. One example is attempting to impair or interfere with a child's relationship with the other parent. *See id.* (holding poisoning of child's mind can constitute substantial and material change).

 For reviewing the best interest of the child, we rely on what are known as the *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The non-exhaustive factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote

the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

## C. Relevant Facts

The agreed order affecting the parent-child relationship gave Deboise the right to access the child's medical, dental, psychological, and educational records. The order imposed on Epps a duty to inform Deboise of significant information concerning the health, education, and welfare of the child. She also had the duty to furnish Deboise with a copy of the child's insurance policy, the schedule of benefits, and the insurance card.

During child exchanges, the parents were required to transfer the child's medications. For health-care appointments, each parent was required to notify the other parent of the appointment in advance so that both could attend. For psychological or psychiatric treatment, the child could receive treatment only with the consent of both parents.

Finally, the order required each parent to notify the other if that parent would be absent for more than four hours during the parent's period of possession. In those instances, the other parent had a right of first refusal to care for the child during the absence.

Deboise testified that, in the summer of 2011, he became concerned about a lump on the child's back. At that time, Epps had not provided Deboise with any information about the child's insurance. Deboise asked Epps for a copy of the medical card, and Epps refused. Deboise asked Epps to schedule a doctor's appointment. Epps refused that as well.

Epps testified that she gave Deboise a copy of the child's insurance card in January 2011, shortly after the agreed order had been entered. Deboise testified it was over a year—after the first contempt hearing—before he was able to access the child's medical records.

During the trial, certain medical records showing doctor's appointments for the child were admitted. Deboise testified that he was not able to attend the appointments because he had not been informed about them. Epps testified that, until it was pointed out to her during the trial, she had not been aware that she was required to notify Deboise of doctor's visits.

Deboise testified that, when Epps did send prescription medicine with the child, the labels would have the doctor's name and the type of medicine removed. Epps denied doing this.

At some point after the agreed order was signed, the child was diagnosed with asthma. Medical records show that the child showed specific allergic reactions to dust mites, cat hair, and dog dander. The parties disputed what efforts the other parent took to control the child's exposure to the relevant allergens.

The medical records show that, as a part of the child's treatment for allergies, the doctor recommended placing dust mite covers on the child's mattress and pillows. Epps testified that she never did this.

Deboise testified that he worked for the K9 unit in his constable's precinct. As a part of this job, he kept his work dog at his residence. Epps testified that the child would display trouble breathing when returning from Deboise's house.

Deboise testified that, as part of work procedure, the dog was required to be kenneled during his time at home. The reasoning is that isolation while at home

makes going to work a treat for the dog. Otherwise, the concern is that the dog would not want to leave the house and perform its training. As a result, Deboise testified, the dog spent almost all of its time at home inside a twelve-foot by nine-foot, air-conditioned and heated kennel in the back yard. Deboise testified that he would only bring the dog inside the house when it was so hot that the air-conditioned kennel could not keep the dog sufficiently cool. Even then, there was a secondary kennel inside the house where the dog would stay.

Deboise also testified that his house was predominantly tile and wood with very little carpet for dog dander to settle into. Even so, a maid came to the house to clean every other week. Deboise testified that the child had breathing problems only infrequently at his house.

Relevant to the child's allergy medicine, the parties disputed whether Epps would include the medicine when transferring the child to Deboise and whether Deboise would administer the medicine while the child was in his possession. Deboise testified that, in early 2014, he had to fill a prescription for an inhaler because Deboise failed to provide one.

Other records showed that the child had received counseling after the agreed order was entered. Deboise testified that he was not made aware of the counseling until the documents were produced during the underlying litigation and, accordingly, could not have consented to the counseling. Epps's attorney argued that notification was not required because the counselor was a licensed professional counselor, not a psychologist or psychiatrist.

Both parties claimed that the other party frequently failed to honor the right of first refusal. Before he was enrolled in kindergarten, Epps enrolled the child in pre-K. Epps did not notify Deboise that she was enrolling the child in pre-K and did not give him the right of first refusal for the periods she would be away from the child. Deboise testified that he had to go to the school himself, after hearing about it, to confirm whether the child was enrolled there.

In another instance involving the right of first refusal, Deboise testified that, in February or March of 2011, he had contacted Epps asking to spend time with the child. Epps responded that the child was asleep. It was 5:00 p.m. Later that day, Deboise went to a club with his brother. Deboise saw Epps at the club and took a picture of her there. Deboise testified that he observed Epps at the club for over four hours.

## D. Analysis

In order to obtain a modification of the agreed order to establish himself as the conservator who has the exclusive right to designate the primary residence of the child, Deboise had to establish that (1) there had been a material and substantial change warranting the modification since the date of the agreed order and (2) the modification would be in the best interest of the child. See FAM. § 156.101(a)(1)(A); *Lenz*, 79 S.W.3d at 14. Epps argues that the evidence is legally and factually insufficient to support either burden.

### 1. Material and Substantial Change

Deboise argues that Epps has judicially admitted that there was a material and substantial change, relieving him of any burden of proof on this point. See *Hill v. Steinberger*, 827 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("A judicial admission is conclusive on the party making it, and it relieves the opposing party's burden of proving the admitted fact[ ] and bars the admitting party from disputing it."). Deboise points to Epps's

petition in which she asserts a material and substantial change. *See Burns v. Burns*, 434 S.W.3d 223, 228 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding assertions in pleadings can constitute judicial admissions). Epps sought a change in the terms of visitation and child support, and alleged a material and substantial change relevant to those matters. The issue before us is Deboise's allegation of a material and substantial change regarding who should designated as the conservator with the exclusive right to designate the primary residence of the child. Epps's allegation that there were material and substantial changes regarding visitation and child support do not constitute judicial admissions that there was a material and substantial change regarding designating the primary residence of the child. *See In re J.C.J.*, No. 05-14-01449-CV, 2016 WL 345942, at *6 (Tex. App.—Dallas Jan. 28, 2016, no pet.) (mem. op.) (holding allegation of material and substantial change regarding visitation does not constitute judicial admission of material and substantial change regarding child support).[1]

Deboise's argument for a material and substantial change was that Epps was attempting to impair or interfere with the child's relationship with him. *See Arredondo*, 383 S.W.3d at 734–35 (holding efforts to impair or interfere with child's relationship with parent can be ground for material and substantial change). During his closing argument at trial, Deboise identified a number of grounds for establishing interference with the child's relationship with him. Deboise argued, among other things, Epps had withheld medical and school records, had failed to notify him of doctors' appointments, and had failed to offer the

right of first refusal. In addition, Deboise argued a material and substantial change due to the child's development of asthma. He asserted that Epps failed to take necessary precautions to reduce problems related to asthma.

Epps argues that Deboise did not meet his burden to prove a material and substantial change because he failed to show a change between before the agreed order had been entered and after that time. *See* FAM. § 156.101(a)(1)(A) (requiring proof of change of circumstances since last order); *Knowles*, 437 S.W.2d at 817 (holding final judgment in custody proceeding is res judicata for best interest of child for then-existing conditions).

The evidence showed, however, that the complained-of actions necessarily arose after the entry of the agreed order. The requirements to provide medical and school information and to offer the right of first refusal did not exist before the agreed order. Likewise, the evidence establishes that the child did not begin school and was not diagnosed with allergies until after the agreed order.

Based on the evidence recited above, the jury could have reasonably determined that Epps failed to notify Deboise of doctor's visits, impairing his ability to be informed about and contribute to decision-making regarding the child's physical health; that she failed to obtain Deboise's consent before she submitted the child to psychological treatment, depriving him of his right to know about and participate in the child's mental health treatment; that she interfered with Deboise's ability to administer medical care for the child by

---

1. *See also Duffie v. Hollander*, No. 01-92-00563-CV, 1993 WL 235945, at *5 (Tex. App.—Houston [1st Dist.] July 1, 1993, no writ) (mem. op.) (not designated for publication) (holding allegation of material and substantial change mandating increase in health insurance did not constitute judicial admission of material and substantial change mandating decrease in health insurance).

waiting over a year to provide him with a copy of the child's medical card, failing to include the child's medications when transferring possession of the child, and removing pertinent information from the child's medicine when it was provided; that she enrolled the child in pre-K without Deboise's knowledge, depriving him of his right to spend time and bond with child when Epps would be away from him for more than four hours; and that she failed to offer Deboise the right of first refusal at other times, again interfering with Deboise's right to spend time and bond with the child. Much of the evidence on these grounds was disputed. But it was the jury's responsibility to resolve these disputes, and we must defer to those determinations. *See City of Keller*, 168 S.W.3d at 822 (holding, in legal sufficiency review, reviewing court cannot substitute its judgment for that of fact-finder as long as evidence falls within zone of reasonable disagreement); *Golden Eagle Archery*, 116 S.W.3d at 761 (holding same for factual sufficiency review).

Even so, certain events were not disputed. Epps acknowledged that she never provided Deboise notice of doctor's appointments; did not dispute that she never told Deboise that she was enrolling the child in pre-K, denying him any ability to exercise his right of first refusal until after he learned about the child being enrolled; and did not dispute that she failed to inform Deboise, let alone obtain his consent, prior to submitting the child to psychological treatment. For the last point, Epps argued there was no violation because the child's therapist was not licensed as a psychiatrist or psychologist. Instead, she was licensed as a licensed professional counselor. The agreed order obligates both parents to obtain the consent of the other before submitting the child "to psychiatric and psychological treatment." A licensed professional counselor provides psychologi-

cal treatment. *See* TEX. OCC. CODE ANN. § 503.003(a), (b)(3) (West 2012).

We hold the evidence is legally and factually sufficient to support the jury's determination that there had been a material and substantial change warranting the modification since the date of the agreed order.

### 2. Best Interest of the Child

After the jury determined that there was a material and substantial change, it had to determine the best interest of the child for designating the conservator who has the exclusive right to designate the primary residence of the child. *See* FAM. § 156.101(a); *Lenz*, 79 S.W.3d at 14. "The best interest of the child is always the primary consideration in resolving issues of conservatorship, possession, and access concerning a child." *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing TEX. FAM. CODE ANN. § 153.002 (West 2014)). We employ the non-exhaustive list of *Holley* factors to determine the best interests of the child. *Holley*, 544 S.W.2d at 371–72. These factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

For the first factor, there is no indication in the record that the child has expressed a preference to have his residence

determined by either parent. The evidence shows he expresses affection and trust for both parents. For the second, third, and fourth factors, the evidence indicates that both parents care for the emotional and physical needs of the child. There is evidence that the child is allergic to dog dander and to dust mites. Deboise testified in detail the restrictions placed on his dog's access to the house, minimizing the child's exposure to dog dander. Epps testified that she had not placed dust mite covers on the child's mattress and pillows as recommended by the child's doctor.

For the fifth factor, there was no evidence that either parent was in need of programs to assist in promoting the best interest of the child. For the sixth element, both parents emphasized the importance of school for the child. The evidence showed that the child made good grades at the school he attended, though he received a number of tardies by failing to get to his class on time after being dropped off at school. Deboise testified that he had researched the school the child would attend near his residence. The school was rated slightly better than the school the child was already attending.

For the seventh factor, both parties were married. The child resided with two half-siblings at Epps's house, an older sister and a younger brother. The child resided with a younger step-brother at Deboise's house and had a half-sibling on the way. Both parents owned their houses, and there was no evidence of any financial instability in either home.

Epps argues that the fact that the child lives with an older half-sister in her home should weigh in favor of keeping the child at her home. The case law she cites contradicts her point. *See In re M.H.*, 319 S.W.3d 137, 154 (Tex. App.—Waco 2010, no pet.) (holding preference that siblings of a marriage be kept together does not apply to half-siblings). Even so, the record shows that, at the time of trial, Deboise's wife was pregnant, meaning the child would have a half-sibling in each house. Deboise also testified that he had a close relationship with Willis Flemming, the father of the half-sister, and that the children frequently spent time together when the children were in their custody.

For the eighth and ninth factors, the only indication of acts or omissions suggesting an improper parent-child relationship were the facts that showed Epps's efforts to impair or interfere with the child's relationship with Deboise. In contrast to this, there was evidence in the record that Deboise would regularly communicate with Epps about injuries the child received, medical conditions, and opportunities for the right of first refusal. The jury could have reasonably concluded from the record that it would be in the best interest of the child to designate the parent who best communicated the needs and concerns of the child as the conservator who has the exclusive right to designate the primary residence of the child.

As part of her factual-sufficiency challenge, Epps points to facts that she argues weigh in her favor for the *Holley* factors. For the first factor, Epps claims that the evidence showed that the child was more bonded to her than to Deboise. She relies on evidence that the child had close bonds to his two half-siblings who also lived in her home. She argues that the child "loved his older sister," whom "he had never lived apart from" and was "like" his "best friend." The child "was also close to his little brother," "played with him all the time," and "liked being with him." Epps also emphasizes the child's success in his school, noting that he was "overachieving beyond his level" and that he had received awards for "language arts and math excellence."

For the second factor, Epps points to evidence about Deboise's punishment of the child, including an instance of allegedly putting him in handcuffs. The facts of this event were disputed. Nothing in the record indicates that the evidence supporting Epps' version is "so contrary to the overwhelming weight of the evidence" as to require the jury to resolve the disputed facts in her favor. *See Cain*, 709 S.W.2d at 176.

For the third factor, Epps emphasizes evidence of her "excellent parenting skills," including testimony from Deboise's mother. Proof that the mother is fit to parent, however, does not disprove a best interest finding in favor of the father. *See Brock v. O'Neal*, No. 01-09-00103-CV, 2010 WL 2545609, at *4 (Tex. App.—Houston [1st Dist.] June 24, 2010, no pet.) (mem. op.) (holding father had no burden to establish mother was unfit to be awarded managing conservatorship).

For the fourth factor, Epps notes evidence that both parents testified to their regular church attendance.

For the fifth factor, in addition to enrollment in school, Epps points to evidence that she had arranged for the child to participate in baseball, basketball, and karate.

For the sixth factor, Epps relies on evidence about her "hectic" but "loving" home, where "everything revolves around the kids, homework and activities and playing, taking them places to do a lot of things," and where the child had his own bedroom. There was evidence that Epps and her current husband have a "healthy, positive, and caring" relationship, that prayer is part of their home life, and that "the children say a prayer each morning when they leave for school."

For the seventh factor, Epps addresses in great detail evidence refuting two prior contempt findings, contending that she was not properly represented by her attorney at the time the findings were made, and insisting that these contempt findings did not show her relationship with the child to be improper. We agree that the trial court's prior findings of contempt do not have great significance on the determination of the best interest of the child and we have not relied on the contempt findings in evaluating whether the evidence sufficiently supports the jury's verdict.

Overall, there was ample evidence in the record in Epps's favor. None of it, however, was so compelling that it established the implied finding of the best interest of the child to be against the great weight and preponderance of the evidence. *See Cain*, 709 S.W.2d at 176.

Considering all of the factors together, we hold there is legally and factually sufficient evidence to support the jury's determination that it would be in the best interest of the child to designate Deboise as the conservator who has the exclusive right to designate the primary residence of the child. We overrule Epps's first three issues.

**Motions for Mistrial and New Trial**

In her fourth issue, Epps argues the trial court abused its discretion by denying her motions for mistrial and motion for new trial.

**A. Standard of Review**

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Schlafly v. Schlafly*, 33 S.W.3d 863, 868 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A ruling on a motion for new trial is likewise reviewed for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). "A trial court abuses its discretion if it acts without reference to any guiding rules or principles." *Michael-*

*ski v. Wright*, 444 S.W.3d 83, 89 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

## B. Applicable Law

Epps's complaint in this issue concerns statements by two witnesses that were not relevant to the issues at trial. In carrying her burden on appeal, the appellant must overcome the presumption that the jury followed the trial court's instructions to disregard the testimony. *See Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 625 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding "[w]e presume, absent evidence to the contrary, that the jury followed such an instruction" to disregard). "Reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict in some respects favorable to the party the error was reasonably calculated to help." *Walker v. Tex. Emp. Ins. Ass'n*, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). Instead, the appellant must show that the error probably caused the rendition of an improper judgment. *See id.*; *see also* Tex. R. App. P. 44.1(a)(1).

## C. Relevant Facts

Before the start of trial, the parties discussed the admissibility of certain evidence. Some of the evidence concerned conflicts between Epps and Willis Flemming over their daughter, the half-sister of the child in question in this suit. Epps's attorney objected to the admissibility of evidence indicating conflicts between Epps and Flemming. The trial court agreed, indicating that any conflicts between those two parties did not have any relevance in the case at trial.

During trial, Deboise called Courtney Jackson, Flemming's wife, to testify. Shortly into her examination, when asked when she had first met Epps, Jackson testified, "A few years back when we were trying to, when Willis was having some difficulty getting his oldest daughter." At a bench conference, Deboise's attorney assured the trial court that Jackson had been instructed to not discuss conflicts between Flemming and Epps over their daughter. Epps's attorney asked for an instruction to disregard the answer, and the trial court granted it.

The next day of trial, Deboise called Flemming to testify. Before Flemming testified, Epps's attorney asked the trial court to obtain assurances from Deboise's attorney that Flemming had been instructed not to discuss conflicts between him and Epps. Deboise's attorney assured the court that Flemming would be instructed immediately before taking the stand.

Once he took the stand, the third question to Flemming was about how he knew Deboise. Flemming answered, "I contacted him through Facebook because, well, she wasn't letting me see my daughter so I know he was going to court for their marriage." Epps's attorney objected, asked for an instruction to disregard, and moved for a mistrial. The trial court granted the request for an instruction to disregard but denied the motion for mistrial.

## D. Analysis

Epps argues,

[Deboise] built his case around the theory that [Epps] could not be trusted to comply with the court order. [Epps] had offered evidence to rebut the allegation, but the testimony of [the two witnesses] expanded the allegation to a violation of [Epps's other child's father's] order as well. The allegation was too much for [Epps] to overcome. The error was incurable. The wrongful testimony was calculated to cause, was intended to

cause and probably did cause the rendition of an improper verdict.

The trial court promptly instructed the jury to disregard the statements made by both Jackson and Flemming. We presume the jury followed these instructions unless there is evidence to the contrary in the record. *See Taylor*, 132 S.W.3d at 625. Nothing in the record indicates that the jury did not follow these instructions.

Epps argues the error is reversible because it appears both witnesses intentionally disregarded their admonishments not to mention the conflict. Whether a witness intentionally injects improper evidence, however, does not correlate to whether the jury was able to disregard it.

We have held above that there is sufficient evidence in the record to support the jury's verdict. We cannot conclude that the two references of an unrelated parental dispute had such a prejudicial effect that it overpowered the jury's ability to disregard the statements and probably caused the rendition of an improper judgment. *See id.* (holding courts presume jury followed instruction to disregard); *Walker*, 291 S.W.2d at 301 (holding judgment will be reversed only if error probably caused improper judgment). Accordingly, we hold the trial court did not abuse its discretion by denying Epps' motion for mistrial or her motion for new trial.

We overrule Epps's fourth issue.

### Jury Instruction

In her fifth issue, Epps argues the trial court abused its discretion by overruling her objection to a jury instruction.

### A. Standard of Review

■■■■. We review a trial court's ruling on jury instructions for an abuse of discre-

tion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). "The trial court has considerable discretion to determine proper jury instructions." *Id.*

### B. Applicable Law

■■■■ "The court shall submit the ... instructions ... which are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. "If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009).

■■■■ Even if error exists, we will not reverse a decision to submit or refuse a particular instruction unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly raising an issue on appeal. TEX. R. APP. P. 44.1(a); *Thota*, 366 S.W.3d at 687. "Charge error is generally considered harmful if it relates to a contested, critical issue." *Hawley*, 284 S.W.3d at 856.

### C. Relevant Facts

The charge instructed the jury, "In determining the terms and conditions of conservatorship, you shall consider the qualifications of each party without regard to the gender of the party or the child." Epps objected to including the instructions in the charge, arguing the issue of gender had not been raised in the suit. The trial court overruled the objection.

## D. Analysis

 Section 153.003 of the Texas Family Code provides that determinations of conservatorship, possession, and access shall be made "without regard" to the sex of the parties or the children. Tex. Fam. Code Ann. § 153.003 (West 2014). Epps does not argue that the charge is an incorrect statement of the law. She argues only that the instruction should not have been included because it was not raised by the evidence. *See Hawley*, 284 S.W.3d at 855. Accordingly, Epps argues, the instruction constituted an improper comment on the weight of the evidence. *See Maddox v. Denka Chem. Corp.*, 930 S.W.2d 668, 671 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding correct statements of law can be impermissible in jury charge if they function as comments on weight of evidence).

Assuming without deciding that it was error for the trial court to submit the instruction at issue, Epps has failed to establish any harm by this alleged error. As Epps acknowledges, no dispute arose between the parties about whether the sex of either parent was relevant to the determination of designation of the conservator who has the exclusive right to designate the primary residence of the child. "Charge error is generally considered harmful if it relates to a contested, critical issue." *Hawley*, 284 S.W.3d at 856.

Epps argues that this instruction "improperly nudge[d] the jury toward a finding in [Deboise]'s favor." To reach this determination, however, we would have to conclude that the instruction for the jury to disregard sex in fact compelled them to consider it as part of their determination. We find no evidence for this in the record.

We overrule Epp's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Justice Massengale, concurring in the judgment.

Michael Massengale, Justice, concurring.

I join the court's opinion, except for its dicta analyzing whether there is sufficient evidence to support a finding of a material and substantial change to justify a change in custody. The sufficiency of the evidence to support the judgment was challenged in three issues, all focused on the best interest of the child. Those issues, as stated verbatim in appellant Shayna Epps's briefs, are:

Issue 1: The trial court erred in entering a judgment based on the jury verdict because the evidence was legally insufficient to support the jury's finding that modification of custody was *in the child's best interest.*

Issue 2: The trial court erred in entering a judgment based on the jury verdict because the evidence was factually insufficient to support the jury's finding that modification of custody was *in the child's best interest.*

Issue 3: The trial court abused its discretion in modifying conservatorship because the evidence was both legally and factually insufficient to prove that modification of custody was *in the child's best interest.*

Appellant's Brief at iii (table of contents, emphasis supplied); *id.* at 5 (issues presented, emphasis supplied); *id.* at 19 (restatement of issues in argument section, emphasis supplied); Appellant's Reply Brief at 6, 9, 13 (restatements of issues in argument section, emphasis supplied); *see also* Appellant's Brief at 17–18 (summary of the argument).

While the briefing did make tangential references to the other element of material-and-substantial change, as suggested by

Epps's various statements of her appellate issues, that element was not the focus of her appellate challenge. The court's extended discussion of this element is dicta, it is unnecessary to the resolution of the appeal, and I decline to join it.