

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00217-CV

**IN THE INTEREST OF H.V.S.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA00393
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:          Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: September 23, 2020

AFFIRMED

Appellant Michelle[1] appeals an order granting Laura and Brian—who served as the foster parents of Michelle's child, Hannah—the right to designate Hannah's primary residence. We affirm the trial court's order.

### BACKGROUND

Hannah was born in 2014. In 2016, the Texas Department of Family and Protective Services ("the Department") removed Hannah from Michelle's home, and on February 23, 2017, it filed a petition to terminate her parental rights. On April 20, 2018, the Department placed Hannah in Laura and Brian's home, where she has lived ever since.

---

[1] To protect the privacy of the minor child, we use fictitious names to refer to the child, her biological mother, and the couple who served as her foster parents. TEX. R. APP. P. 9.8(b)(2); TEX. FAM. CODE ANN. § 109.002(d).

On September 10, 2018, the trial court signed a final order ("the original order") denying the Department's petition to terminate Michelle's parental rights. In the original order, the trial court found that appointing Michelle as Hannah's managing conservator "would significantly impair [Hannah's] physical health or emotional development." As a result, the original order appointed the Department as Hannah's permanent managing conservator and Michelle as possessory conservator. The original order granted the Department's petition to terminate the parental rights of Hannah's biological father. Neither Michelle nor Hannah's biological father appealed.

After the trial court signed the original order, Michelle continued working with the Department to satisfy the requirements of her service plan, and eventually the Department allowed Michelle to exercise unsupervised overnight visits with Hannah. On May 15, 2019, Laura and Brian filed a petition in intervention seeking to terminate Michelle's parental rights on a number of grounds. Alternatively, they asked the trial court to dismiss the Department as Hannah's permanent managing conservator and to appoint them as her joint managing conservators.

On December 3, 2019, Michelle filed a motion for authorization to place, alleging she had completed all aspects of her service plan and addressed all issues identified by the Department. She asked the trial court to authorize the placement of Hannah with her or, alternatively, to set a reunification schedule with increasing visitation and the goal of full reunification. Laura and Brian later amended their petition to allege the parties' circumstances had materially and substantially changed since rendition of the original order. They also dropped their request to terminate Michelle's parental rights.

The parties tried Michelle's motion and Laura and Brian's petition to the bench. During the day-long trial, the court heard testimony from Michelle, Laura, Brian, Michelle's mother, Michelle's adult daughter, the Department case manager, a Department caseworker who

previously worked with the family, and a court appointed special advocate ("CASA") volunteer. The court also heard a recommendation from Hannah's attorney ad litem.

During closing arguments, Laura and Brian contended they had overcome the parental presumption established by section 153.373 of the Texas Family Code because Hannah had "been out of [Michelle's] home for 12 or more months." The trial court agreed. On April 8, 2020, the trial court signed a "Modification to Final Order in Suit Affecting the Parent-Child Relationship" which: (1) removed the Department as Hannah's managing conservator and dismissed it from this case; (2) appointed Michelle, Laura, and Brian as Hannah's joint managing conservators; and (3) designated Laura and Brian as the conservators with the right to determine Hannah's residence. Michelle timely filed a notice of appeal; the Department did not.[2]

## ANALYSIS

Relying on sections 153.131 and 153.373 of the Texas Family Code, Michelle argues the trial court abused its discretion by refusing to apply the parental presumption in her favor because insufficient evidence supports a finding that: (1) allowing Michelle to designate Hannah's residence "would significantly impair [Hannah]'s physical health or emotional development"; and (2) Michelle voluntarily relinquished care of Hannah. *See* TEX. FAM. CODE ANN. §§ 153.131, 153.373. She also argues the trial court's best interest determination is supported by factually insufficient evidence, and therefore constitutes an abuse of discretion.

---

[2] The Department filed a brief in support of Michelle's arguments. "While a party of record is generally entitled to appellate review, that party must be prejudiced before he has standing to appeal." *In re Estate of Denman*, 270 S.W.3d 639, 642 (Tex. App.—San Antonio 2008, pet. denied). Here, the trial court dismissed the Department from this case, and the Department has not challenged that ruling on appeal. Nor has it identified any other portion of the trial court's judgment that "injuriously affected" its own rights. *See id.* The Department therefore lacks standing to complain of errors that "merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Under these unique circumstances, we consider the Department's brief as an amicus brief. *See* TEX. R. APP. P. 11.

In response, Laura and Brian argue the parental presumption does not apply to the modification of an existing order. They also contend the trial court's best interest determination is supported by the evidence.

### *Does the parental presumption apply under these facts?*

#### *Standard of Review*

The parties' arguments regarding the parental presumption require us to consider the proper application of several provisions of the Texas Family Code. We review questions of statutory interpretation de novo. *In re C.Y.K.S.*, 549 S.W.3d 588, 591 (Tex. 2018); *In re M.I.A.*, 594 S.W.3d 595, 607 (Tex. App.—San Antonio 2019, no pet.). "Our aim in interpreting a statute is to ascertain and give effect to the Legislature's intent." *In re C.Y.K.S.*, 549 S.W.3d at 591.

#### *Applicable Law*

The Texas Family Code provides that in an original suit for conservatorship, possession, and access to a child, a natural parent "shall be appointed sole managing conservator" of a child "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE § 153.131(a). This presumption in favor of a natural parent in an original suit is rebutted if the trial court finds: (1) the parent voluntarily relinquished care, control, and possession of the child for a year or more; and (2) the appointment of someone other than the parent as the child's managing conservator is in the child's best interest. TEX. FAM. CODE § 153.373.

However, while "[a] natural parent has the benefit of the [statutory] parental presumption in an original proceeding, and the nonparent seeking conservatorship has a higher burden," the same is not true in a modification proceeding. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000). This is because Chapter 153, which contains the statutory parental presumption, only applies to *original*

suits to determine conservatorship, possession, and access. *See id.*; *see also In re Guardianship of C.E.M.-K.*, 341 S.W.3d 68, 78–79 (Tex. App.—San Antonio 2011, pet. denied). In contrast, suits seeking to modify an existing order are controlled by Chapter 156, which does not contain a similar parental presumption.[3] *See* TEX. FAM. CODE ANN. § 156.001; *In re V.L.K.*, 24 S.W.3d at 343. The Texas Supreme Court has identified these chapters as "distinct statutory schemes that involve different issues" because "Chapter 156 modification suits raise additional policy concerns such as stability for the child and the need to prevent constant litigation in child custody cases." *In re V.L.K.*, 24 S.W.3d at 343; *see also In re R.T.K.*, 324 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting those policy concerns "apparently prompted the Legislature to remove any statutory presumption that would favor a parent over a nonparent in a custody-modification proceeding").

### *Application*

It is undisputed that the original order made a final custody determination regarding Hannah and did not appoint Michelle as a managing conservator. *See In re Guardianship of C.E.M.-K.*, 341 S.W.3d at 79; *see also In re C.J.C.*, 603 S.W.3d at 818–19. Both Michelle's motion for authorization to place and Laura and Brian's petition in intervention explicitly sought to modify the terms of the original order, and the order at issue in this case changed the original order's conservatorship provisions. *See In re V.L.K.*, 24 S.W.3d at 343; *see also In re Guardianship of C.E.M.-K.*, 341 S.W.3d at 79. We conclude this is a modification proceeding, so Chapter 153 does

---

[3] The Texas Supreme Court recently clarified that even though Chapter 153's statutory parental presumption does not apply in modification suits, a constitutional parental presumption applies in cases where the order to be modified appointed at least one fit parent as the child's managing conservator. *In re C.J.C.*, 603 S.W.3d 804, 816–19 (Tex. 2020) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). The Texas Supreme Court explicitly noted, however, that its holding in *C.J.C.* "does not alter the burden of proof for modifications of court-ordered custody arrangements in which neither parent is named a managing conservator in the original order." *Id.* at 819. Because the original order in this case did not appoint Michelle as a managing conservator, the constitutional parental presumption at issue in *C.J.C.* does not apply here. *Id.*

not apply. *See In re Guardianship of C.E.M.-K.*, 341 S.W.3d at 78–79. We therefore overrule Michelle's contention that the trial court erred by not applying Chapter 153's parental presumption.

### *Was the trial court's modification order an abuse of discretion?*

Our conclusion that Chapter 153's parental presumption does not apply here is not the end of our analysis. Because Michelle contends the trial court "[did] not have sufficient evidence on which to exercise its discretion," we must also consider whether the trial court's modification of the original order constitutes reversible error under Chapter 156. *See In re Guardianship of C.E.M.-K.*, 341 S.W.3d at 80.

### *Standard of Review*

We review a trial court's ruling on a motion to modify for abuse of discretion. *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Id.* Under the abuse of discretion standard, a challenge to the legal and factual sufficiency of the evidence is not an independent ground of error, but is instead a factor to be considered in determining whether the trial court abused its discretion. *See In re K.K.R.*, No. 04-18-00250-CV, 2019 WL 451761, at *2 (Tex. App.—San Antonio Feb. 6, 2019, no pet.) (mem. op.). "When an appellant challenges the legal and factual sufficiency of the evidence in cases where the proper standard is abuse of discretion, we engage in a two-prong analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.).

"An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions." *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no

pet.). A trial court does not abuse its discretion if some evidence of a substantive and probative character supports its exercise of discretion. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The factfinder has the sole authority to resolve conflicts in the evidence, and "the fact that a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion." *Id.* at 214–15, 221. Because the trial court did not file findings of fact and conclusions of law, we must presume it made all the factual findings necessary to support its judgment. *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.).

*Applicable Law*

A trial court "may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and," inter alia, "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since" the rendition of the earlier order. TEX. FAM. CODE ANN. § 156.101(a). In determining a child's best interest, a trial court may consider the non-exclusive factors promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.3d 367 (Tex. 1976). *See Epps v. Deboise*, 537 S.W.3d 238, 243–44 (Tex. App.—Houston [1st Dist.] 2017, no pet.).[4] The trial court is not required to consider all the *Holley* factors, and under some circumstances, evidence of a single factor may be sufficient to support a best interest finding. *See In re J.R.L.*, No.

---

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

04-19-00049-CV, 2020 WL 2543315, at \*4 (Tex. App.—San Antonio May 20, 2020, no pet.) (mem. op.).

*Application*

It is undisputed that Michelle's circumstances have materially and substantially changed since the date of the original order. *See* TEX. FAM. CODE § 156.101(a). As a result, this case turns on whether the trial court abused its discretion by concluding it was in Hannah's best interest to award Laura and Brian the right to designate her primary residence. *See id.*

Michelle testified she has addressed her mental health, has been sober for almost two years, and has a family support system to help her care for Hannah. She also testified Hannah is "very happy" during their visits and cries when it is time for her to return to Laura and Brian. Michelle further testified Hannah told her she does not miss Laura and Brian when she is away from them. The Department caseworker assigned to this case testified Michelle successfully completed her service plan and "has demonstrated she can keep [Hannah] safe." The caseworker also testified that based on Michelle's positive changes, the Department allowed her to exercise unsupervised overnight visits with Hannah, including a twelve-day visit over the 2019 Thanksgiving holiday. The caseworker stated the quality of those visits is "great" and that she believes it is in Hannah's best interest for her to be reunified with Michelle. It is apparent that Michelle loves Hannah very much.

Furthermore, the CASA volunteer testified Michelle lives in a clean, safe home, is "very engaged" with Hannah, is protective of her, and can give her stability. She also testified Michelle's recent move to a bigger home is "a good thing," and since Michelle lives and shares expenses with her mother, "she'll have more support." In addition, Michelle's mother testified Michelle has stable housing and a steady income, and Michelle's adult daughter testified Hannah is bonded with her biological family. During closing argument, the Department asked the trial court to grant

Michelle's motion and "[p]lace the child with the mother so that the Department can supervise and see how things go with that placement at this time."

While this evidence may support a conclusion that it is in Hannah's best interest for Michelle to designate her primary residence, there was conflicting evidence upon which the trial court could have reached the opposite conclusion. *See In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied) (trial court is in best position to resolve conflicts in evidence). While the CASA volunteer described Michelle's most recent move as a positive change, she also testified Michelle moved to three different homes in the fourteen months before trial. *See In re J.R.L.*, 2020 WL 2543315, at *5 (trial court can consider parent's frequent moves in assessing stability of home). Laura testified Hannah is "clingy and sometimes she's just very shutdown" when she leaves for visits with Michelle, and Brian testified Hannah has had trouble sleeping since she began having extended visits with Michelle. *See Schell v. Schell*, No. 03-11-00833-CV, 2014 WL 641744, at *2 (Tex. App.—Austin Feb. 14, 2014, no pet.) (mem. op.) (considering evidence child "had difficulty readjusting when he returned from a weekend visitation"). The trial court also heard testimony that Hannah had nightmares after viewing part of a horror movie with Michelle's four-year-old granddaughter while in Michelle's care.

Hannah's case manager testified Hannah is bonded to Laura and Brian, loves her current school, and is engaged in Laura and Brian's neighborhood. *See Holley*, 544 S.W.2d at 372 (trial court may consider child's emotional needs). Before being placed with Laura and Brian, Hannah was not potty-trained and was "almost nonverbal." Now, Hannah is a "chatterbox" who refers to Laura as "mommy" and Brian as "daddy." Additionally, although Michelle testified she would work with Laura and Brian if the trial court ordered shared custody, the evidence shows that over her twelve-day Thanksgiving visit, Michelle did not facilitate a single phone call between Hannah and her foster parents. Finally, the CASA volunteer testified Hannah has lived away from Michelle

for four of the five years of her life. During closing argument, Hannah's attorney ad litem recommended that the trial court appoint Laura and Brian as Hannah's managing conservators and Michelle as a possessory conservator.

While the evidence in support of Michelle's position is compelling, an appellate court may not substitute its own judgment for that of the trial court. *See In re J.J.F.R.*, No. 04-15-00751-CV, 2016 WL 3944823, at *2 (Tex. App.—San Antonio July 20, 2016, no pet.) (mem. op.). Again, demonstrating an abuse of discretion on appeal is one of the tougher appellate propositions. *See Lindsey*, 965 S.W.2d at 592. On this record, we cannot conclude the trial court lacked sufficient evidence upon which to exercise its discretion or that it reversibly erred in applying that discretion. *See In re C.A.M.M.*, 243 S.W.3d at 222; *Gardner*, 229 S.W.3d at 753–54. While the trial court's decision was contrary to the Department's recommendation, that recommendation "was only a portion of the evidence the trial court considered in making its ruling." *See In re K.K.R.*, 2019 WL 451761, at *5. We therefore overrule Michelle's issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice