**Opinion issued January 11, 2024**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-22-00568-CV

———————————

**SETH DOUGLAS, Appellant**

**V.**

**CHRISTYL L. DOUGLAS, Appellee**

---

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-56152**

---

## MEMORANDUM OPINION

After a jury trial on competing petitions to modify the parent-child relationship as to three children, the trial court entered an order removing Seth Douglas (Father) as a joint managing conservator and appointing Christyl L. Douglas (Mother) as the sole managing conservator. On appeal, Father contends

(1) the evidence was legally and factually insufficient to support the jury's conservatorship finding and (2) the trial court erred by excluding certain evidence that would have rebutted Mother's claim that her designation as sole managing conservator was in the children's best interest. Because we conclude that sufficient evidence supports the jury's verdict and that Father cannot show harmful evidentiary error, we affirm.

**Background**

Father and Mother divorced in June 2015. Relevant here, the agreed divorce decree appointed Father and Mother as joint managing conservators of their son and two daughters, with Mother having the exclusive right to designate the children's primary residence.

Four years later, conflict between Mother and Father concerning the children came to a head. Father refused to return the two daughters to Mother when a holiday possession period ended. He claimed the son had assaulted one of the daughters, making it unsafe for the daughters to return to Mother's house with the son.

Mother filed an emergency petition to modify the parent-child relationship. Father filed a counterpetition the same day. Each parent sought (1) temporary orders giving them immediate possession of the daughters, (2) the removal of the other as a joint managing conservator, and (3) their own appointment as the children's sole managing conservator. The trial court signed interim temporary orders requiring

2

Father to return the daughters to Mother and prohibiting the son from being around the daughters without adult supervision.

The case proceeded through discovery to trial. At trial, each party offered evidence of their struggle to coparent and challenged the other's parental fitness. The jury found that the joint managing conservatorship should be replaced by a sole managing conservatorship in favor of Mother. The trial court entered a final order in accordance with the jury's verdict.

## Modification of Conservatorship

In his first issue, Father argues that the evidence is legally and factually insufficient to support the jury's finding that appointing Mother sole managing conservator was in the children's best interest because Mother alienated the children from Father.

### A. Standard of Review

Because a trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession, we typically review a decision to modify conservatorship for an abuse of that discretion. *Epps v. Deboise*, 537 S.W.3d 238, 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.). But when, as here, there was a jury trial, the trial court may not contravene the jury verdict on the appointment of a sole managing conservator. *See* TEX. FAM. CODE § 105.002(c)(1)(A). Instead, the jury's verdict is reviewed for legal and factual

3

sufficiency. *See, e.g.*, *Lenz v. Lenz*, 79 S.W.3d 10, 17 (Tex. 2002) (applying legal sufficiency standard to review to jury verdict for modifying divorce decree to remove residency restriction); *Epps*, 537 S.W.3d at 242–43 (applying legal and factual sufficiency standards to jury verdict for modifying conservators' rights).

We will sustain a legal sufficiency or "no evidence" challenge if the record shows: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes the opposite of the vital fact. *Epps*, 537 S.W.3d at 242 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). In our legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. When the evidence permits only one inference, it may not be disregarded by either the jury or the reviewing court. *Id.* But if the evidence at trial enables reasonable and fair-minded people to differ in their conclusions, the jury must be allowed to do so. *Id.* A reviewing court cannot substitute its judgment for that of the jury, so long as the evidence falls within this zone of reasonable disagreement. *Id.*

In our factual sufficiency review, we consider all the evidence that supports or contradicts the jury's verdict. *Epps*, 537 S.W.3d at 243 (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). We set aside a verdict only if

4

the evidence supporting it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Epps*, 537 S.W.3d at 243. The jury is the sole judge of the credibility of the witnesses and the weight of their testimony. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B.    Analysis

The party seeking to modify the parent-child relationship must show that (1) there has been a material and substantial change warranting the modification since the last order establishing conservatorship of the child and (2) the modification would be in the best interest of the child. TEX. FAM. CODE § 156.101(a)(1)(A); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re K.D.B.*, Nos. 01-18-00840-CV & 01-18-00843-CV, 2019 WL 4065276, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, no pet.) (mem. op.).

The first element is not at issue here. By alleging in his counterpetition that circumstances relevant to the appointment of a conservator and the terms of the conservatorship had materially and substantially changed, Father judicially admitted the first element. *See In re A.N.G.*, 631 S.W.3d 471, 479–80 (Tex. App.—El Paso 2021, no pet.) ("In a modification proceeding, if both parties' claims contain the common essential element of changed circumstances . . . , one party's allegation that the essential element is met constitutes a judicial admission."); *see also Hill v.*

5

*Steinberger*, 827 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1992, no writ) (admissions in trial pleadings are observed as judicial admissions and require no proof of the admitted act). Consequently, he may not (and does not) challenge the sufficiency of the evidence supporting a material and substantial change in circumstance. *See In re A.E.A.*, 406 S.W.3d 404, 410–11 (Tex. App.—Fort Worth 2013, no pet.).

Instead, our sufficiency analysis focuses on the second element—whether the modification is in the children's best interest. "The best interest of the child is always the primary consideration in resolving issues of conservatorship, possession, and access concerning a child." *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see* TEX. FAM. CODE § 153.002. We use the non-exhaustive list of *Holley* factors to determine best interests. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may show that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions.

*Moreno*, 363 S.W.3d at 737 (citing *Holley*, 544 S.W.2d at 371–72). In the context of custody modification, other factors to be considered include the children's need for stability and the need to prevent constant litigation in child-custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

According to Father, it was not in the children's best interest to designate Mother sole managing conservator because the evidence showed that Mother alienated the children from him. Father cites cases recognizing that a child's best interest may be affected by parental alienation. *See, e.g.*, *Garcia v. Harding*, No. 01-07-01049-CV, 2008 WL 4965358, at *4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2008, no pet.) (mem. op.) ("Poisoning a child's mind against a parent or hampering a child's ability to favorably associate with the other parent may further affect a child's best interest."); *In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ) (same). He also points to his own testimony that, before trial, he had not seen his daughters in four months (missing 47 visits) and his son in eight months (missing 134 visits). Father attributed the missed visits to Mother's "vindictiveness." And he complained that Mother disparaged him in front of the children by calling him "shitty," "an asshole," and "the devil's douche bag."

Contrary to Father's characterization, the evidence of parental alienation by Mother was conflicting. While Mother did not dispute that Father had missed visits with the children, she denied interfering with the parent-child relationship. Instead,

7

Mother blamed Father's own actions for any strain in his relationship with the children. According to Mother, Father and the son are estranged at least in part because Father had called the police on the son more than once and the son viewed his relationship with Father as detrimental to his mental health. Mother also testified that one of the daughters no longer wishes to visit with Father. She described the children crying before Father's possession periods. She described her own efforts to encourage the children to see Father. And she described Father's refusal to address the strained parent-child relationships despite her repeated urgings.

As the sole judge of the weight and credibility of the evidence, the jury could have reasonably credited Mother's account of events, despite Father's assertion of parental alienation. *See Golden Eagle Archery*, 116 S.W.3d at 761; *Epps*, 537 S.W.3d at 243. And other evidence supported Father's removal as joint managing conservator. For instance, the jury heard testimony that Father was prone to outbursts; fabricated the son's assault against one of the daughters to justify denying Mother access to the daughters; kept the daughters out of school for 21 days, causing them to fall behind and resulting in truancy charges; and failed to keep the daughters neat, clean, and well-groomed. The jury also heard testimony Mother's and Father's inability to coparent sometimes prevented the children from obtaining medical and psychological care.

Viewing this evidence in the appropriate light, we conclude the jury's finding designating Mother as sole managing conservator is supported by legally and factually sufficient evidence. We overrule Father's first issue.

**Evidentiary Rulings**

In his second and third issues, Father contends the trial court abused its discretion by excluding untimely evidence under Texas Rule of Civil Procedure 193.6—namely, (1) audio recordings of Mother and Grandmother acknowledging the son's assaults against his sisters, and (2) his fiancée's testimony. *See* TEX. R. EVID. 193.6 (providing for exclusion of testimony and evidence not timely disclosed in discovery responses).

A.   **Standard of Review and Applicable Law**

We review the trial court's decision to exclude evidence for an abuse of discretion. *McBride v. McBride*, 396 S.W.3d 724, 730 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). If we find the trial court abused its discretion by excluding evidence, the complaining party must still show that the erroneous evidentiary ruling was harmful. *See* TEX. R. APP. P. 44.1(a); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). Evidentiary error is not reversible on appeal unless it "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a)(1); *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014). This usually requires the complaining party to show that the judgment turns on the excluded

evidence. *City of Brownsville*, 897 S.W.2d at 753–54; *see Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) (in determining harm, court ordinarily will not reverse judgment when evidence in question is not controlling on material issue dispositive to case).

While a reviewing court sometimes can discern from the record the gist of the excluded evidence and the propriety of the trial court's ruling without an offer of proof or a formal bill of exception, it cannot determine whether exclusion of the evidence was harmful. *Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 608 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Failure to preserve the excluded evidence in the record through an offer of proof or bill of exception results in waiver of any error in its exclusion. *See Akukoro v. Akukoro*, No. 01-12-01072-CV, 2013 WL 6729661, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2013, no pet.) (mem. op.); *see* TEX. R. EVID. 103(a)(2) (error may not be based on ruling which excludes evidence unless substance of the evidence was made known to the court by offer, or was apparent from the context).

## B.    Analysis

The trial court excluded both the audio recordings and the fiancée's testimony under Rule 193.6, which provides that discovery that is not timely disclosed and witnesses that are not timely identified are inadmissible at trial. *See* TEX. R. CIV. P. 193.6(a). Father asserts on appeal that the excluded evidence was admissible under

exceptions to the exclusionary rule. He argues the audio recordings were admissible under Rule 193.6's good-cause exception because he could not retrieve the recordings from his computer before trial. *See* TEX. R. CIV. P. 193.6(a)(1) (court may admit evidence if "there was good cause for the failure to timely make, amend, or supplement the discovery response"). He also argues, under Rule 193.6's no-unfair-surprise exception, that Mother could not have been surprised by audio recordings of her own conversations. *See* TEX. R. CIV. P. 193.6(a)(2) (court may admit testimony if "failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties"). Finally, as to his fiancée's testimony, Father argues it too was admissible under the no-unfair-surprise exception because his fiancée was Mother's friend "at one time," Mother knew Father was cohabitating with the fiancée, and the fiancée was identified by name and phone number in discovery responses and on Father's trial witness list. *See id.*

Even if we assume, without deciding, that the trial court abused its discretion by excluding the audio recordings and the fiancée testimony under Rule 193.6, Father has not met his burden to show that the complained-of error probably resulted in the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1).

Father asserts that exclusion of the evidence was harmful because it prevented him from attacking the credibility of Mother's allegations and key witness

11

testimony—including from Mother and Grandmother—on disputed facts. But Father neither made an offer of proof before the trial court nor filed a formal bill of exception preserving the excluded evidence. Consequently, the record on what the excluded evidence would show is limited. Because the audio recordings are not contained in the record, the record does not reveal the details of any assaults Mother or Grandmother claimed to witness between the children.[1] And while the record reveals that Father's fiancée was present at some events Mother pointed to as reasons to remove him as a joint managing conservator, it does not reveal what she would have to say about those events. We therefore cannot determine whether the excluded audio recordings or fiancée testimony were controlling on any material issue. *See Able*, 35 S.W.3d at 617.

We hold that Father did not preserve his complaints of harmful error resulting from the exclusion of evidence for our review. *See Akukoro*, 2013 WL 6729661, at *7 (holding complained-of evidentiary error was waived when excluded evidence

---

[1] We note that Father's arguments on appeal concern audio recordings of "either [Mother] or [Grandmother] talking about the son's assaults on the daughters." But at trial, Father offered recordings of only Grandmother, not Mother. Father asserted the recordings of Grandmother could be used to (1) refresh Grandmother's recollection that she had claimed to witness "her grandson on more than one occasion assault his sisters" and (2) show that her trial testimony to the contrary was not truthful. Father asserted the recordings also included conversations with Mother in a post-judgment motion for new trial. But he does not complain of the denial of his new-trial motion on appeal.

was not preserved in record through offer of proof or bill of exception). We overrule Father's second and third issues.

## Conclusion

We affirm the trial court's order.


Sarah Beth Landau
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.